UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KALISHA F. WHITE,

                              Plaintiff,

v.                                                    5:14-CV-1140
                                                      (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                  OF COUNSEL:

LAW OFFICE OF HARRY J. BINDER                 CHARLES E. BINDER, ESQ.
AND CHARLES E. BINDER, P.C.
  Counsel for Plaintiff
60 East 42nd St., Ste. 520
New York, New York 10165

U.S. SOCIAL SECURITY ADMIN.                   BENIL ABRAHAM, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## <u>REPORT and RECOMMENDATION</u>

     This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 19.)  This case has proceeded in accordance with General

Order 18.

     Currently before the Court, in this Social Security action filed by Kalisha F. White

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 12, 17.)  For the reasons set forth below, it is recommended that Plaintiff's motion be granted in part, in the extent it seeks remand under Sentence Four of 42 U.S.C. § 405(g), and denied in part, and Defendant's motion is denied in part and granted in part.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on August 23, 1983.  (T. 150.)  She completed her GED.  (T. 194.)  Generally, Plaintiff's alleged disability consists of anxiety, depression, back impairment and neck impairment.  (T. 193.)  Her alleged disability onset date is May 1, 2011. (T. 78.) Her date last insured is June 30, 2012.  (*Id.*)  She previously worked as a cashier, home health aide, housekeeper, and in security.  (T. 181.)

### B. Procedural History

On April 16, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act.  (T. 178.)  Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On April 10, 2013, Plaintiff appeared before the ALJ, John P. Ramos.  (T. 43-77.)  On June 24, 2013, ALJ Ramos issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 22-41.)  On December 4, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 3-8.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 28-36.) First, the ALJ found that Plaintiff met the insured status requirements through June 30, 2012, and Plaintiff had not engaged in substantial gainful activity since May 1, 2011. (T. 28.) Second, the ALJ found that Plaintiff had the severe impairments of fibromyalgia, depressive disorder, post-traumatic stress disorder ("PTSD"), and anxiety. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 29-31.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work. (T. 31.)[1] Specifically, the ALJ determined Plaintiff could:

> stand and walk for [five] hours and sit for [six] hours in an [eight]-hour workday with normal breaks. [Plaintiff] could bend and stoop [three] hours and balance and climb for [two] hours in an [eight]-hour work period. She retain[ed] the ability to understand, and follow simple instructions and directions; perform simple tasks with supervision and independently. She [could] maintain attention and concertation for simple tasks; regularly attend to a routine and maintain a schedule; and relate to, and interact appropriately with others to the extent necessary to carry out simple tasks. She [could] handle reasonable levels of simple, repetitive work-related stress in that she [could] make decisions directly related to the performance of simple work, and handle usual work place changes and interactions associated with simple work.

(*Id.*) Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T.34-35.)

---

[1]       Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes four separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ failed to properly weigh the medical evidence in the record.  (Dkt. No. 12 at 13-19 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the ALJ failed to properly evaluate Plaintiff's credibility.  (*Id.* at 19-22.)  Third, Plaintiff argues the ALJ erred in relying on the Medical-Vocational Guidelines ("the Girds") at step five.  (*Id.* at 22-24.)  Fourth, and lastly, Plaintiff argues the ALJ failed to adequately consider Plaintiff's obesity.  (*Id.* at 24-25.)

### B.    Defendant's Arguments

In response, Defendant makes four arguments.  First, Defendant argues Plaintiff's obesity was not a severe impairment.  (Dkt. No. 17 at 5-6 [Def.'s Mem. of Law].)  Second, Defendant argues the ALJ properly considered the medical evidence.  (*Id.* at 7-11.)  Third, Defendant argues the ALJ properly assessed Plaintiff's credibility.  (*Id.* at 11-13.)  Fourth, and lastly, Defendant argues the ALJ properly found that Plaintiff could perform other work.  (*Id.* at 13-15.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*,

817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a de novo review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine

whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this

sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct.

2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work activities.
> If the claimant suffers such an impairment, the third inquiry is whether,
> based solely on medical evidence, the claimant has an impairment which
> is listed in Appendix 1 of the regulations.  If the claimant has such an
> impairment, the [Commissioner] will consider him disabled without
> considering vocational factors such as age, education, and work
> experience; the [Commissioner] presumes that a claimant who is afflicted
> with a "listed" impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment, he has the
> residual functional capacity to perform his past work.  Finally, if the
> claimant is unable to perform his past work, the [Commissioner] then
> determines whether there is other work which the claimant could perform.
> Under the cases previously discussed, the claimant bears the burden of
> the proof as to the first four steps, while the [Commissioner] must prove
> the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.    ANALYSIS

### A.    The ALJ's Assessment of the Medical Opinion Evidence in the Record and Ultimate RFC Determination

The relevant factors considered in determining what weight to afford an opinion

include the length, nature and extent of the treatment relationship, relevant evidence

which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). It is well established that a treating physician's opinion as to the nature and severity of an impairment is given controlling weight. *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (per curiam). But a treating physician's opinion is not entitled to controlling weight when it is not supported by medically acceptable, clinical, and laboratory diagnostic techniques or is inconsistent with other evidence in the record. *Greek,* 802 F.3d at 375.

The following factors must be considered by the ALJ when deciding how much weight the treating source opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2)(i)-(iv), 416.927(c)(2)(i)-(iv). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

RFC is defined as: "what an individual can still do despite his or her limitations." *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

When making a RFC determination, the ALJ considers Plaintiff's physical abilities, mental abilities, and symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. §§ 404.1545(a), 416.945(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. *LaPorta v. Bowen,* 737 F.Supp. 180, 183 (N.D.N.Y. 1990).

Plaintiff received her primary care from Hoplyn Beaton, M.D. and Ethan Flaks, M.D at North Medical Family Physicians. (T. 392-447.) Dr. Beaton completed a form titled "Physician's Medical Report" for JOBSplus! dated March 16, 2012. (T. 272-273.)[2] Therein, Dr. Beaton opined she began treating Plaintiff on January 5, 2010. (T. 272.) Dr. Beaton indicated Plaintiff suffered from low back pain, anxiety, and depression. (*Id.*) She stated Plaintiff underwent an MRI, was treated by pain management, and was referred to an orthopedist. (*Id.*) Dr. Beaton opined that Plaintiff was "moderately limited" (able to perform from two to four hours/day) in her ability to: walk, stand, use hands, and use public transportation. (T. 273.) Dr. Beaton opined that Plaintiff was "very limited" (able to perform one to two hours/day) in her ability to: push, pull, bend,

---

[2]    JOBSplus! assists recipients of public assistance. See http://www.jobsplus.cc/about_us.htm (last accessed April 18, 2016).

lift, carry, and climb. (*Id.*) Dr. Beaton opined that Plaintiff had no limitations in her ability to sit, see, hear, and speak. (*Id.*)

Dr. Flaks completed a "Multiple Impairment Questionnaire" on November 28, 2012. (T. 371-378.) Dr. Flaks began treating Plaintiff in October of 2012 for her fibromyalgia, morbid obesity, depression, and anxiety. (T. 371.) Dr. Flaks stated that Plaintiff's fibromyalgia diagnosis was supported by multiple pain trigger points over her extremities and torso. (*Id.*) When asked to identify laboratory and diagnostic test results to support Plaintiff's diagnosis, Dr. Flaks wrote "no simple diagnostic test is available (to my knowledge) that will prove the existence or non-existence of fibromyalgia." (T. 372.)

In terms of exertional limitations, Dr. Flaks opined Plaintiff could sit up to one hour in an eight-hour day and stand/walk up to one hour in an eight-hour day. (T. 373.) Dr. Flaks opined that he would not recommend that Plaintiff sit continuously in a work setting and Plaintiff would need to "get up and move around" every 15 to 20 minutes for a period of 15 to 20 minutes before she could sit again. (T. 373-374.) Dr. Flaks reported that Plaintiff could frequently lift and carry up to 10 pounds and occasionally lift and carry up to 50 pounds. (T. 374.)[3]

In terms of non-exertional impairments, Dr. Flaks opined Plaintiff had "marked" limitations in her ability to grasp, turn, and twist objects. (T. 374.)[4] Dr. Flaks reported Plaintiff had "moderate" limitations in her ability to: use her fingers and hands for fine manipulation, and use her arms for reaching. (T. 375.) Dr. Flaks reported Plaintiff

---

[3]      The terms "frequent" and "occasional" are not defined on the form. (T. 374.) The options presented were: frequent, occasional, and never. (*Id.*)

[4]      "Marked" was defined as "essentially precluded" and " "moderate" was defined as "significantly limited but not completely precluded." (T. 374.)

"constantly" experienced pain and was incapable of even "low stress" work.  (T. 376.)
Dr. Flaks indicated Plaintiff would have good days and bad days and would be absent
from work more than three times a month due to her impairments or treatment.  (T.
377.)  Dr. Flaks reported Plaintiff could not push, pull, kneel, bend, or stoop, and would
need to avoid fumes, gases, and heights.  (*Id.*)

The Plaintiff was also examined by consultative examiner, Kalyani Ganesh, M.D.
on May 23, 2012.  (T. 318-321.)  Based on her examination of Plaintiff, Dr. Ganesh
opined Plaintiff had no gross physical limitations for sitting, standing, walking or the use
of her upper extremities.  (T. 321.)  Dr. Ganesh opined Plaintiff had "mild limitations"
with lifting, carrying, pushing, and pulling.  (*Id.*)

The ALJ afforded Dr. Beaton's medical opinion "little weight."  (T. 29.)  The ALJ
reasoned her opinion was not supported by diagnostic studies.  (*Id.*)  The ALJ afforded
Dr. Flaks's medical source statement "less weight."  (T. 32.)  The ALJ reasoned that Dr.
Flaks did not have a strong treatment history with Plaintiff and the opinion was
inconsistent with Plaintiff's reported activities of daily living.  (*Id.*)  The ALJ afforded Dr.
Ganesh's opinion "significant weight."  (T. 33.)  The ALJ reasoned that Dr. Ganesh
found "no real fibromyalgia," examined Plaintiff, and had professional and programmatic
expertise.  (T. 32-33.)

For the reasons further outlined herein, the ALJ erred in weighing the medical
opinion evidence in the record; and further, his RFC determination was not supported
by substantial evidence.

Impairments generally are defined as "anatomical, physiological, or psychological
abnormalities ... demonstrable by medically acceptable clinical and laboratory

techniques." *See* 42 U.S.C. § 423(d)(3); 20 C.F.R. §§ 404.1508, 416.908.  Applying this definition is a straightforward exercise with respect to most physical and mental impairments because they can be identified objectively through standard laboratory, imaging, physical examination and psychological diagnostic techniques. It becomes problematic, however, with respect to fibromyalgia, a medical abnormality consisting of a syndrome of chronic pain of musculoskeletal origin but uncertain *cause.  Campbell v. Colvin*, No. 5:13-CV-451, 2015 WL 73763, at *5 (N.D.N.Y. Jan. 6, 2015) (citing *Green–Younger v. Barnhart,* 335 F.3d 99, 101 n. 1 (2d Cir. 2003)).

Persons afflicted with fibromyalgia may experience severe and unremitting musculoskeletal pain, accompanied by stiffness and fatigue due to sleep disturbances, yet have normal physical examinations, e.g., full range of motion, no joint swelling, normal muscle strength and normal neurological reactions.  *Campbell*, 2015 WL 73763, at *5 (citing *Preston v. Secretary of Health & Human Servs.*, 854 F.2d 815, 818 (6th Cir.1988)).  Thus, lack of positive, objective clinical findings does not rule out the presence of fibromyalgia or its symtpoms.

To be sure, the ALJ was correct in his assertion that Plaintiff's treatment and diagnosis of fibromyalgia was "not well documented" (T. 32); however, the record does contain long standing complaints consistent with fibromyalgia, an eventual diagnosis of fibromyalgia, and treating source medical opinions regarding Plaintiff's functional limitations due to her fibromyalgia.

The ALJ stated that the first notation of fibromyalgia was made by Dr. Beaton in July of 2012 (T. 32); however, Dr. Beaton mentioned fibromyalgia in notations dated June 18, 2012 (T. 371).  At that time, Dr. Beaton referred Plaintiff to a rheumatologist for

a "fibromyalgia workup." (T. 414.) However, the record does not contain treatment notations from a rheumatologist until January 17, 2013 when Plaintiff met with Ramzi Khairallah, M.D. (T. 459.) Dr. Khairallah concluded that based on his physical examination of Plaintiff, she had "clear-cut severe fibromyalgia." (T. 462.)[5] He noted that he ordered x-rays and a rheumatic panel to "look into all the possibilities and be on the safe side." (T. 462.) Dr. Khairallah noted on examination that Plaintiff had 18 out of 18 total tender points. (*Id.*) Dr. Khairallah noted Plaintiff had morning stiffness, headache, and paresthesia. (T. 461.) He reported that Plaintiff complained of all day morning stiffness, fatigue, headache, and numbness/tingling of her hands and feet. (T. 459.) Of note, Dr. Khairallah's physical examination indicated Plaintiff had full range of motion in all of her joints without swelling or tenderness; however, Plaintiff had significant limitation in her cervical spine and some tenderness in her right wrist. (*Id.*) Dr. Khairallah met with Plaintiff in February of 2012 and again he indicated Plaintiff had "clear-cut severe fibromyalgia." (T. 454.) In March of 2012, Plaintiff was advised to increase sleep quality, decrease stress, and engage in "light weight bearing exercise." (T. 451.)

In January of 2013 Plaintiff also met with Martin Schaeffer, M.D., with the Onondaga Musculoskeletal Group. (T. 388.) Dr. Schaeffer conducted a physical examination, which was substantially normal; however, Dr. Schaeffer noted "diffuse tenderness" in 17 out of 18 classic distribution points. (T. 389.) Dr. Schaeffer's

---

[5]       Dr. Khairallah's notations indicate that Plaintiff reported she had received a diagnosis of fibromyalgia and was being treated with Flexeril and Neurontin; however, the record does not contain a diagnosis of fibromyalgia previous to Dr. Khairallah's diagnosis. Dr. Beaton's notations from January through June 2012, indicated that Plaintiff was prescribed Flexeril for low back pain. (T. 413, 415, 417, 419, 421, 425.)

notations indicated he reviewed records from Plaintiff's primary care providers and an MRI report. (*Id.*) Dr. Schaeffer increased Plaintiff's dosage of Flexeril and Neurontin. (*Id.*) Interestingly, the ALJ afforded Dr. Schaeffer's opinion "more weight" reasoning it was consistent with Dr. Ganesh's opinion. (T. 29.) However, the ALJ only cited to Dr. Schaeffer's relatively normal physical examination findings and failed to acknowledge that despite these benign findings, Dr. Schaeffer examination also indicated 17 out of 18 tender points consistent with Plaintiff's fibromyalgia. (T. 389.)

Although the record indicated that Plaintiff was not officially diagnosed with fibromyalgia until January of 2013, the record contained complaints of symptoms consistent with those ultimately attributed to her fibromyalgia. For example, Plaintiff complained of back pain and had pain on palpitation in July of 2011(T. 432), January 2012 (T. 426), February 2012 (T. 421, 424), March of 2012 (T. 419), and April 2012 (T. 418).

Here, the ALJ erred in affording "little weight" to Dr. Beaton's medical source statement. (T. 29.) The ALJ's only reason for providing Dr. Beaton's statement "little weight" was that it was not supported by diagnostic studies. (*Id.*) To be sure, Dr. Beaton's March 2012 statement did not contain a diagnosis of fibromyalgia; however, a longitudinal reading of the record indicates that Plaintiff's symptoms could reasonably stem from fibromyalgia before the January 2013 diagnosis. *Campbell,* 2015 WL 73763, at *11 (ALJ erred in discrediting treating source's medical opinion for a perceived lack of objective corroborating evidence).

The ALJ also erred in reasoning Dr. Flaks's medical source statement deserved "less weight" because he did not have a strong treatment history with Plaintiff and his

opinion was inconsistent with Plaintiff's activities. (T. 32.) To be sure, under the Regulations, frequency is a factor to be considered in evaluating the opinion of a treating source. 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i). Dr. Flaks indicated he first treated Plaintiff in October of 2012 and had most recently seen her in November of 2012 (T. 371); however, Dr. Flaks took over Plaintiff's care after Dr. Beaton left the practice, thus Dr. Flaks was aware of Plaintiff's treatment history with the practice. In addition, frequency is just one factor in assessing a treating source's opinion. Dr. Flaks, unlike Dr. Ganesh, had the benefit of Plaintiff's treatment record and personally examined her on more than one occasion.

Further, the ALJ erred in his determination that Plaintiff's activities of daily living did not support Dr. Flaks's statement. (T. 32.) The ALJ mischaracterized Plaintiff's activities of daily living. The ALJ provided a summary of Plaintiff's testimony regarding her activities of daily living. (T. 30.) However, it is apparent that the ALJ relied solely on Dr. Ganesh's report; essentially that Plaintiff could cook three meals three times a week, clean and do laundry twice a week, shop three times a week, and care for her children. (T. 30.) The ALJ stated that Plaintiff watched television, read and went to church. (*Id.*) The ALJ also stated that Plaintiff was taking online courses for her associates degree and was planning on getting a Master's degree. (*Id.*) However, Plaintiff testified that she cannot do regular household chores, she can only do one task a day, and that the older children assist with a lot of the housework. (T. 58.) Although she cares for her children, she testified that it takes her over two hours to get herself up and "situated" before she could wake her children for the day. (T. 60.) During the hearing, Plaintiff specifically stated that she had not attended church in a year because the constant

standing and sitting caused her pain.  (T. 63.)  Plaintiff also testified that two to three times a month her pain was so bad she could not get out of bed and her mother had to come help with the children.  (T. 74-75.)  At the hearing Plaintiff also testified that she was no longer taking online courses because she couldn't complete assignments on time and had trouble sitting in front of the computer "for so long."  (T. 74.)  These statements contradict the ALJ's reading of Plaintiff's activities of daily living.  *See Crysler v. Astrue*, 563 F. Supp. 2d 418, 443 (N.D.N.Y. 2008). The ALJ was entitled to resolve conflicts in the record, but his discretion was not so wide as to permit him to pick and choose only evidence that supported a particular conclusion. *See Smith v. Bowen,* 687 F.Supp. 902, 904 (S.D.N.Y.1988) (citing *Fiorello v. Heckler,* 725 F.2d 174, 175–76 (2d Cir.1983)); *see also Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir.2011); *Robinson v. Barnhart,* 366 F.3d 1078, 1083 (10th Cir.2004).

Therefore the ALJ's determination to afford Dr. Flaks's statement "less weight" is not supported by substantial evidence.  Dr. Flaks may have treated Plaintiff only a few times, but he took over her care from another doctor in the practice and personally treated Plaintiff on more than one occasion.  Further, the ALJ fundamentally misstated Plaintiff's activities of daily living.

Overall, the ALJ's RFC determination was not supported by substantial evidence. The ALJ afforded Dr. Ganesh's opinion "significant weight," reasoning that Dr. Ganesh examined Plaintiff and was an expert both professionally and programmatically.  (T. 32-33.)  However, Dr. Ganesh's medical source opinion was vastly inconsistent with the medical evidence in the record and further, Dr. Ganesh's medical opinion was too

vague to alone constitute substantial evidence to support a determination that Plaintiff could perform the exertional and non-exertional requirements of light work.

To be sure, it is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c), and 416.927(e).

The Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims whose "opinions may constitute substantial evidence in support of residual functional capacity findings." *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015), *adopting Report & Recommendation*, (rejecting similar "global objection to reliance on nonexamining medical advisers' opinions" by same plaintiffs' counsel)). Opinions of consultative examiners, such as Dr. Ganesh, may constitute substantial evidence "if they are consistent with the record as a whole." *Leach ex. Rel. Murray v. Barnhart,* No. 02-CCV-3561, 2004 WL 99935, at *9 (S.D.N.Y.Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."). Here, Dr. Ganesh's medical source opinion was not "consistent with the record as a whole."

Dr. Ganesh's opinion that Plaintiff had no limitations in her ability to sit, stand, walk or use her upper extremities was strikingly inconsistent with the medical opinions

of Plaintiff's treating sources who opined that Plaintiff had severe limitations in these areas. To be sure, the medical source statements provided by Plaintiff's treating providers, Dr. Beaton, Dr. Flaks, and Victor Petrovets do not perfectly mirror each other; however, they are substantially more consistent in the functional limitations they impose than the limitations imposed by Dr. Ganesh. At the very least, the statements by Plaintiff's treating providers would exclude the ability to perform light work. Further, Dr. Flaks's and Mr. Petrovets, unlike Dr. Ganesh, had the benefit of Plaintiff's ultimate fibromyalgia diagnosis.

Further, the ALJ provides no analysis of how Dr. Ganesh's statement that Plaintiff had "no limitations" in sitting, standing and walking and "mild" limitations with lifting, carrying, pushing and pulling equated to the exertional demands of light work. The ALJ did not conclude that Dr. Ganesh's opinion was supported by any other medical evidence in the record, the ALJ only reasoned that Dr. Ganesh's opinion was based on his examination, Dr. Ganesh found "no real fibromyalgia," and Dr. Ganesh was an expert. (T. 32-33.) Again, the ALJ substituted his own interpretation of the medical record. *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) (What [consultative examiner] means by "mild degree" and "intermittent" is left to the ALJ's sheer speculation.").[6]

Other providers, such as Dr. Khairallah and Dr. Schaeffer, noted mostly normal physical examination findings, as did Dr. Ganesh; however, these treating sources also

---

[6] For example, the ALJ determined that Plaintiff could bend and stoop three hours in a work-day and balance and climb for two hours in a work-day. (T. 31.) The ALJ's decision provided no analysis or decision of how the ALJ reached that conclusion, thus indicating the ALJ relied on his own lay opinion in formulating Plaintiff's RFC. *See Dusharm v. Colvin*, 14-CV-1562, 2016 WL 1271490, at *6 (N.D.N.Y. Mar. 31, 2016) (remanding where the ALJ's RFC indicated that Plaintiff had greater physical abilities than opined by any medical opinion of record).

noted that despite these normal findings Plaintiff suffered from fibromyalgia and she had symptoms consistent with that diagnosis. (T. 389, 459.) The ALJ appears to conclude, based on his own interpretation of the evidence, that Plaintiff's limitations could not be due to her fibromyalgia because of her normal physical examinations. However, this is a fundamental misunderstanding of fibromyalgia. Again, "[p]ersons afflicted with fibromyalgia may experience severe and unremitting musculoskeletal pain, accompanied by stiffness and fatigue due to sleep disturbances, yet have normal physical examinations, e.g., full range of motion, no joint swelling, normal muscle strength and normal neurological reactions. Thus, lack of positive, objective clinical findings does not rule out the presence of fibromyalgia, but may, instead, serve to confirm its diagnosis." *Campbell*, 2015 WL 73763, at *5.

The ALJ also improperly determined that Dr. Ganesh found "no real fibromyalgia." (T. 32.) The ALJ's conclusion implied that Dr. Ganesh tested Plaintiff for fibromyalgia, or otherwise reviewed treatment notations regarding Plaintiff's treatment and ultimately disagreed; however, Dr. Ganesh did neither. (T. 318-321.) Dr. Ganesh's report does not once mention fibromyalgia. (*Id.*) Dr. Ganesh performed his examination on May 23, 2012; Plaintiff was first referred to a rheumatologist for a fibromyalgia work up by Dr. Beaton in June of 2012. The ALJ improperly substituted his own lay opinion and interpretation of Dr. Ganesh's statement, or lack thereof. Further, any focus by the ALJ on the absence of a diagnosis by Dr. Ganesh of fibromyalgia was misplaced, because "its absence [was] no more indicative that the patient's fibromyalgia [was] not disabling than the absence of headache is an indication that a patient's prostate cancer is not advanced." *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996).

Therefore, for the reasons stated herein and for the reasons outlined in Plaintiff's brief, the ALJ erred in the weight afforded to the medical source opinions in the record and the ALJ's RFC determination was not supported by substantial evidence.

Plaintiff also argues that the ALJ deprived her of her due process right to cross-examine Dr. Ganesh on his findings before relying on his report, despite Plaintiff's objections. (Dkt. No. 12 at 17 [Pl.'s Mem. of Law].) The Second Circuit has held that "the right to due process in a social security disability hearing does not require that a reporting physician be subpoenaed any time a claimant makes such a request." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). Although the ALJ erred in his assessment of the medical opinions in the record, he did not commit legal error in denying Plaintiff's request to subpoena Dr. Ganesh. The medical record before the ALJ at the time of the hearing was complete and Plaintiff had the opportunity to supply, and did supply, treatment records and medical source statements from her providers. Therefore, Plaintiff had a fair and meaningful opportunity to present her case. *Yancey*, 145 F.3d at 111.

In addition, Plaintiff argues the ALJ erred in his assessment of Plaintiff's mental health care providers, Eileen Essi, LCSW and Bill Hines, M.D. (Dkt. No. 12 at 19 [Pl.'s Mem. of Law].) Ms. Essi and Dr. Hines completed a medical source statement dated April 9, 2013. (T. 470-477.) The ALJ stated that Dr. Hines's statement was "not entitled to extra weight as a treating physician because of the short treatment relationship." (T. 34.) Overall, the ALJ afforded the opinion "some, but less weight." (*Id.*)

The Second Circuit has held that a physician's opinion is entitled to less weight when the physician did not treat the plaintiff on an ongoing basis. In *Mongeur v.*

*Heckler,* the court emphasized that the opinion of a treating physician is given extra weight because of his unique position resulting from the "continuity of treatment he provides and the doctor/patient relationship he develops." 722 F.2d at 1039 n. 2 (2d Cir.1983). By contrast, the Court reasoned that a physician who examined a plaintiff only "once or twice" did not see the plaintiff regularly and thus did not develop a physician/patient relationship with him. *Id.* The Second Circuit concluded that such a physician's medical opinion was "not entitled to the extra weight of that of a 'treating physician.' " *Id.; see also* 20 C.F.R. § 404.1527(c)(2), 416.927(c)(2) (an ALJ should generally "give more weight to" the opinion of a doctor who treated a claimant on an ongoing basis and thus could provide a "detailed, longitudinal picture of [the claimant's] medical impairment(s)," offering a more "unique perspective to the medical evidence" than provided by reports from "individual examinations, such as consultative examinations or brief hospitalizations").

Therefore, the ALJ did not err in his conclusion that Dr. Hines's opinion was entitled to lesser weight because he did not have an ongoing treating relationship with Plaintiff; however, the ALJ's analysis of the opinion ends there. The ALJ failed to provide any further discussion of the opinion in accordance with the Regulations at 20 C.F.R. § 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

In sum, the ALJ failed to provide a sufficient analysis of the medical evidence in the record, further, the ALJ's RFC determination was not supported by substantial evidence in the record. Therefore, remand is recommended so that the ALJ may properly evaluate the medical opinion evidence in the record and formulate a RFC based on a proper weighing of those opinions.

**B.     The ALJ's Credibility Determination**

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96–7p. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 96–7p. Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain

or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii); SSR 96-7p.

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably cause her alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of the symptoms was not entirely credible "for the reasons explained in this decision." (T. 34.)

Plaintiff argues the ALJ's vague conclusion was insufficient to support his credibility determination. (Dkt. No. 12 at 21 [Pl.'s Mem. of Law].) Further, Plaintiff argues the ALJ erred in reasoning her conditions "began or aggravated after the expiration of insured status" because the ALJ failed to cite to evidence to support this conclusion and further, Plaintiff also filed a claim for SSI benefits which have no insured status requirement. (*Id.* at 21.)

First, for the reasons stated herein, the ALJ's RFC determination was not supported by substantial evidence because the ALJ failed to properly assess the opinions in the record. Therefore, the ALJ's credibility determination was inherently flawed. Without a proper assessment of the medical opinion evidence in the record the ALJ cannot properly evaluate Plaintiff's statements in light of that evidence. Second, in his credibility analysis the ALJ placed almost exclusive emphasis on Plaintiff's alleged activities of daily activity, which, for the reasons discussed herein, the ALJ fundamentally mischaracterized. (T. 34.) Third, regarding Plaintiff's insured status, the ALJ again appeared to mischaracterize the record. To be sure, the first diagnosis of

Plaintiff's fibromyalgia in the record was dated January of 2013, seven months after Plaintiff's date last insured (T. 459), and the first mention of fibromyalgia in the record occurred on June 18, 2012, twelve days before Plaintiff's date last insured. (T. 371). However, as stated herein, a reading of the longitudinal record indicated that Plaintiff suffered from symptoms associated with fibromyalgia well before her actual diagnosis. In addition, Plaintiff applied for SSI, which does not take into considerate Plaintiff's impairments in relation to a date last insured. Therefore, remand is also recommended for a proper credibility analysis.

### C. The ALJ's Step Five Determination

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical–Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986).

The Second Circuit has explained that the ALJ may not solely rely on the Grids if a non-exertional limitation "has any more than a 'negligible' impact on a claimant's ability to perform the full range of work." *Selian v. Astrue,* 708 F.3d 409, 421 (2d Cir.2013) (quoting *Zabala v. Astrue,* 595 F.3d 402, 411 (2d Cir.2010)). A non-exertional impairment is non-negligible "when it ... so narrows a claimant's possible range of work

as to deprive him of a meaningful employment opportunity." *Zabala,* 595 F.3d at 411. Whether VE testimony is required must be determined on a "case-by-case basis." *Bapp* 802 F.2d at 605–06. Further, "the mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the [Grids]." *Id.* at 603.

Plaintiff argues the ALJ's reliance on the Grids at step five was improper due to Plaintiff's "significant non-exertional limitations." (Dkt. No. 12 at 22-23 [Pl.'s Mem. of Law].) Because remand is recommended for a proper RFC determination, including a proper credibility analysis, remand is therefore also recommended for a step five determination based on Plaintiff's RFC.

### D.    Obesity

Plaintiff argues the ALJ erred in his determination that Plaintiff's obesity was not a severe impairment. (Dkt. No. 12 at 24-25 [Pl.'s Mem. of Law].) At step two of the sequential evaluation process, the ALJ must determine whether the plaintiff has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *See* C.F.R. §§ 404.1520(c), 416.920(c). The plaintiff bears the burden of presenting evidence establishing severity. *Taylor v. Astrue,* 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Miller v. Comm'r of Social Sec.,* No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed

or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995).

Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel,* No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)).

In addition, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Lasiege v. Colvin*, No. 12-CV-01398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. § 404.1523, 416.923 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity").

Here, the ALJ did not err in classifying Plaintiff's obesity as a non-severe impairment. As stated in Defendant's brief, one treatment note that Plaintiff's obesity caused knee pain and citations to Plaintiff's weight in the record was not enough to establish that Plaintiff's obesity was severe. (Dkt. No. 17 at 6 [Def.'s Mem. of Law]); *see also Martin v. Astrue*, 337 F. App'x 87, 89 (2d Cir. 2009) (finding the ALJ did not err in his step two determination that plaintiff's obesity was a non-severe impairment where

there was no evidence that plaintiff's obesity limited plaintiff's work ability). However, given that remand is recommended for a properly evaluation of the medical evidence in the record, this recommendation should not be read as to preclude the ALJ from making a severity determination on remand should he find the evidence to support such a conclusion.

**RECOMMENDED**, that the Plaintiff's motion for judgment on the pleadings be **GRANTED in PART and DENIED in PART**, and the Commissioner's determination be **GRANTED in PART and DENIED in PART**, and the matter be **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g) and consistent with this report**.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:     April 21, 2016

William B. Mitchell Carter
U.S. Magistrate Judge